UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| GENESIS M. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CAUSE NO.  1:12-cv-1060-DKL-RLY |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ENTRY**

Genesis M. Hill applied for disability benefits under Titles II (disability insurance benefits) and XVI (supplemental security income) of the Social Security Act. After the Commissioner of Social Security finally denied her claim, she brought this suit for judicial review of the Commissioner's decision. For the reasons explained herein, the Commissioner's decision will be affirmed.

**Standards of review and disability**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004).  This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations.  Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law

judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

After the state agency denied Ms. Hill's claim on initial and reconsideration reviews, she requested and received a hearing before an ALJ. Ms. Hill was represented by counsel at the hearing. She and a vocational expert testified. The ALJ issued his decision denying Ms. Hill's claim for benefits. At step one, the ALJ determined that she had not engaged in substantial gainful activity since her alleged onset date. At step two, he found that she had the following severe impairments: ascending aortic aneurysm, status post grafting and repair; obesity; post-traumatic stress disorder; major depressive disorder; and panic attacks. At step three, the ALJ found that Ms. Hill's impairments, singly and in combination, did not meet or medically equal any of the listing of impairments. He considered the listings in category 4.00 (cardiovascular system) and listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders).

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

For steps four and five, the ALJ determined Ms. Hill's RFC. He found that she had the capacity for light work with additional restrictions: she cannot climb ladders, ropes, or scaffolds; she can perform other postural movements only occasionally; she should avoid concentrated exposure to hazards; she can carry out simple instructions and perform simple, routine tasks involving no production rate or pace work. At step four, the ALJ concluded that this RFC permitted Ms. Hill to perform her past relevant work as a fast-food worker and, therefore, that she was not disabled. He also made a step-five determination that, considering her RFC and vocational characteristics (age, education, skills), there are a significant number of jobs in the national economy that she can perform and, therefore, on this ground as well, she is not disabled.

After the Commissioner's Appeals Council denied Ms. Hill's request to review the ALJ's decision, that decision became the Commissioner's final decision and the one that the Court reviews.

**Discussion**

Ms. Hill contends that the ALJ committed four errors in his decision.

**1. Listings.** Ms. Hill argues that the evidence proved that she satisfied listings 12.04 and/or 12.06, and that the ALJ ignored, selectively considered, or refused to consider "all of the evidence proving the claimant's disability,"(*Plaintiff's Brief* at 13), particularly multiple Global Assessment of Functioning ("GAF") scores of 50 and below. Her first

6

argument is a non-starter because it is not supported with any factual or legal development and the Court will not reweigh the evidence. It was her burden to show and explain errors by the ALJ, not simply argue for a different outcome with the conclusory argument that the evidence proves that she is disabled.

In support of her second argument, Ms. Hill briefly describes some of the content of nine reports or evaluations, some containing low GAF scores, that she contends the ALJ ignored, selectively considered, or refused to consider. What she apparently means by "ignored" is that the ALJ's decision does not specifically mention these items of evidence, and, by "selectively considered," that the ALJ's decision mentions or cites the item of evidence and/or some of its content but not other content that she describes. In stating that decisions within the United States Court of Appeals for the Seventh Circuit (she cites two by the court of appeals and six by district courts) have accepted GAF scores as evidence of disability, Ms. Hill implies, but does not state, that the GAF scores demanded specific address by the ALJ.

It is, by now, well-established that an ALJ need not mention or address every piece of evidence in the record. *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence"). What *is* required is that the ALJ build a logical bridge from the evidence to his conclusions and sufficiently articulate his analysis and rationale so that a court can trace the path of his reasoning. *Roddy v.*

*Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). Merely listing or describing evidence that the ALJ did not mention is ineffective. Ms. Hill did not provide any reasons why the ALJ was required to explicitly address the particular items of evidence that she cited and the Court will not analyze the record itself to make that argument for her. The Court's review of the ALJ's decision and her descriptions of the evidence reveals no indication that the ALJ did not review and consider the record as a whole or was not aware of the facts or descriptions in Ms. Hill's allegedly "ignored" items of evidence.

Ms. Hill has not shown error by the ALJ.

**2. Failure to call a medical advisor.** Ms. Hill argues that it was error for the ALJ to not call a medical advisor to obtain an expert opinion on the issue of medical equivalence to the listings. Listings medical equivalence is a medical issue that must be based on expert medical opinion. *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). That opinion can be supplied by the state-agency medical experts who review the record on initial and reconsideration reviews, and throughout the administrative process if necessary, and record their opinions on forms such as a Disability Determination and Transmittal form (SSA-831) ("DDT"). *Id.* Ms. Hill argues that the ALJ reasonably could not have relied on the opinions of the state-agency psychologists and medical doctors in this case because evidence was submitted to the record after they rendered their opinions. She specifically identifies four medical reports that were submitted after the state-agency medical experts

8

had recorded their opinions on reconsideration review: R. 788, 790, 802, and 807. Again, however, she fails to assert, let alone show, that these four reports contained content of such materiality that the state-agency psychologists' opinions were vitiated as a basis for the ALJ's medical-equivalence finding. And, again, the Court will not independently analyze the evidence before the state-agency experts, compare it to the evidence in the four later-submitted reports, weigh the two, and determine if the state-agency experts' opinions can stand. That was her burden. The Court's summary review of the reports reveals no significant content therein that differs from the record before the state-agency medical experts; in fact, much of the content consists of medical opinion that Ms. Hill's conditions were improving and not as severe as earlier evidence indicated.

State-agency psychologists Drs. Neville and Pressner reviewed the records on initial and reconsideration reviews and recorded in DDTs and a Psychiatric Review Technique form their opinions that Ms. Hill's impairments did not meet or medically equal any of the listings. (R. 64-75, 82-85, 659-72.) Ms. Hill has not shown that it was erroneous for the ALJ to rely on their opinions in making his listings medical-equivalence finding.

**3.    Credibility determination.**    Ms. Hill argues that the ALJ's credibility determination is erroneous because he "failed to make any accurate findings regarding the seven factors the Ruling [S.S.R. 96-7p] requires the ALJ to consider because the ALJ ignored or rejected the evidence corroborating the claimant's allegations." (*Plaintiff's Brief* at 20.) However, the only error that she specifies is that the ALJ ignored or rejected GAF scores

of 47 to 50 in the record.  Thus, her argument is simply a rehash of her previous argument about ignored and rejected evidence, and it is rejected for the same reasons.  She does not show or even suggest why the GAF scores should have received greater weight than the other evidence on which the ALJ relied in making his credibility determination or should have compelled a finding that she was entirely credible.  To hold that the ALJ erred would require the Court to examine and weigh the evidence on its own, something that the Court cannot do.

Ms. Hill also contends that the ALJ erred because he first determined her RFC and then assessed her credibility against it.  She relies on circuit decisions criticizing such "backwards procedure."  The Commissioner points out that the Seventh Circuit has explained that its criticism of the "boilerplate" or "template" generally utilized by the Commissioner's ALJs in recording their credibility determinations does not apply if ALJs adequately explain their decisions.  *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).  The Court finds that the ALJ explained his credibility determination and that any question about the placement of his ultimate conclusion in relation to his credibility discussion is one of only style, not substance.

Ms. Hill also states that the ALJ's credibility determination is erroneous because it is perfunctory, he "fail[ed] to cite any evidence in support of his conclusory statements," and his decision is "apparently intentionally vague[]."  The ALJ's credibility discussion covers two and one-half pages, contains many citations to the evidence, and does not

10

appear to be vague — at any rate, Ms. Hill does not show any vagueness, intentional or otherwise.

Ms. Hill has failed to show error in the ALJ's credibility determination.

**4.  Step five determination.**  Ms. Hill states that the ALJ's hypotheticals to the vocational expert omitted all of the limitations due to her severe mental impairments.  As noted, the ALJ decided Ms. Hill's case at step four and made only an alternate, or back-up, finding at step five.  She does not identify any limitations that the ALJ found applicable yet omitted from his hypotheticals; thus, what she really argues is that the ALJ should have made different findings about the severity of her impairments, her RFC, and her credibility.  However, she did not develop that argument with facts or law and it is forfeited  Ms. Hill has not shown error in the ALJ's step-four or step-five findings.

## Conclusion

Ms. Hill has not shown that the ALJ's decision is the result of material legal error or is not supported by substantial evidence.  Therefore, the Commissioner's decision will be **AFFIRMED**.

**DONE this date:** 09/27/2013

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generate e-mail.